AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

FILED          ENTERED
LODGED          RECEIVED

**DEC 18 2019**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Residence 9032 2nd Avenue South, Seattle,<br>Washington, as more fully described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.   MJ19-610

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Residence 9032 2nd Avenue South, Seattle, Washington, as more fully described in Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1159 & 371 | Misrepresentation of Indian Produced Goods and Products; and<br>Conspiracy to commit offense or to defraud United States. |

The application is based on these facts:

✓ See Affidavit of Special Agent Sean W. Hyrons, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or ☐ telephonically recorded.

_____
*Applicant's signature*

Sean W. Hyrons, Special Agent
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: ____12/18/2019____

_____
*Judge's signature*

City and state: Seattle, Washington          Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A
### Locations to be Searched

The residence located at **9032 2nd Avenue South, Seattle, Washington 98108**, is further described as a wood frame single family house of approximately 1,090 square feet on an approximately 8,600 square foot lot. The house is a one and half story and reported to have four bedrooms and one full bath. The exterior is wood and is painted gray. The roof is shingled. The premises is surrounded by a fence with a gate that must be manually opened to enter or exit the driveway. There is a paved driveway leading from the street to the front of the house. The house is the last house on the left at the end of 2nd Avenue South.





For **9032 2nd Avenue South, Seattle, Washington 98108**, authority to search extends to all parts of the property, including any outbuildings, unattached garages or workshops, inside containers, compartments, or safes located on the property, whether

locked or not where the items described in Attachment B (list of items to be seized) could be found, and all containers, compartments, or safes located on the property, whether locked or not, where the items described in Attachment B (list of items to be seized) could be found. Authority to search includes any vehicle located on the property including VAN DYKE'S silver 1994 Infiniti bearing Washington license plate BFR9705 that is registered to Jerry C. VAN DYKE; a white box truck, unknown make or model on the south side of the residence; a tan colored recreation vehicle, unknown make and model on the south side of the residence; and a green colored sport utility vehicle, unknown make and model on the south side of the residence.

Attachment A – Locations to be Searched
USAO No. 2019R00667 - 2

**ATTACHMENT B**
**Items to be Seized**

Evidence, fruits and instrumentalities, as further described in Attachment B, of the crimes of misrepresentation of Indian produced goods and products, and conspiracy to commit these offenses by Jerry Chris VAN DYKE, aka Jerry WITTEN, and others known and unknown, in violation of 18 U.S.C. §§ 1159 & 371 including the following:

1.    Lists of customers and related identifying information; types, amounts, and prices of jewelry produced sold and or manufactured; any and all correspondence in relation to jewelry sales, production or business practices;

2.    All bank records, checks, credit card bills, account information, books, records, receipts, notes, ledgers, and other records as they may relate to the aforementioned violations of the Indian Arts and Crafts Act; the term "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROMSs, optical discs, backup tapes, printer buffers, smart cards, flash/thumb drives, as well as printouts or readouts from any magnetic storage device);

3.    Any handmade form (such as writing, drawing, painting): any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, and photocopies);

4.    Tools and instruments involved in the manufacturing, production and sales of jewelry;

5.    Personal books and records reflecting names, addresses, telephone numbers, and other contact or identification data relating to the manufacture and sale of the prohibited items;

6.    Hallmarking/signature tool(s) with any combination of letters;

7.    Documents indicating travel in interstate and foreign commerce such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, credit card receipts, and telephone bills recording travel;

8.    Documents relating to birth, heritage, or lineage;

9.    Documents indicating property ownership and tenancy;

Attachment B – Items to be Seized
USAO No. 2019R00667 – 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.    Jewelry making material to include but not limited to jewelry making equipment/supplies/tools, gems, raw material and minerals to include ivory, bone, mother of pearl, abalone shell, wood, feathers, turquoise, copper, brass, silver, and gold, grinders, polishers, epoxy, signature stamps/punches, hallmarking tools, wax molds, etc.;

11.    Safes and locked storage containers, and the contents thereof which are otherwise described in this document;

12.    All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash. These documents are to include applications, payment records, money orders, frequent customer cards, etc;

13.    Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments; and

14.    Cell Phones: Cellular telephones and other communications devices including Blackberries may be seized but will not be searched without further authority of the Court.

Attachment B – Items to be Seized
USAO No. 2019R00667 – 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**AFFIDAVIT**

2

STATE OF WASHINGTON        )

3                                          )        ss

COUNTY OF KING              )

4

5        I, Sean W. Hyrons, a Special Agent with the United States Department of Interior,

6  United States Fish and Wildlife Service, Office of Law Enforcement in Albuquerque, New

7  Mexico, being first duly sworn, hereby depose and state as follows:

8                    **AFFIANT BACKGROUND & INTRODUCTION**

9        1.        I am a Special Agent ("SA") with the United States Department of Interior,

10  United States Fish and Wildlife Service, Office of Law Enforcement ("USFWS") in

11  Albuquerque, New Mexico.  I am an "investigative or law enforcement officer" of the United

12  States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer

13  of the United States empowered by law to conduct investigations of, and to make arrests for,

14  offenses enumerated in Title 18 of the United States Code.

15        2.        I have worked for the USFWS as a SA since approximately November 2018.

16  Before transferring to USFWS, I worked as an SA for the Bureau of Land Management,

17  Office of Law Enforcement and Security since January 2012.  Prior to working as an SA, I

18  was a Bureau of Land Management Law Enforcement Ranger for approximately three years,

19  a United States Forest Service Law Enforcement Officer for approximately eight years and a

20  City of Orlando Police Officer for approximately two years.  I have received and completed

21  formal training that included a twelve-week Criminal Investigator training program in

22  Glynco, Georgia.  I have training and experience in the investigation of crimes relating to the

23  theft, fraud, trafficking, and destruction of natural and cultural resources, with a special

24  emphasis on Native American items.  I have investigated violations of the Indian Arts and

25  Crafts Act and have become familiar with the tactics and techniques associated with Indian

26  Arts and Craft fraudulent activities.  Specifically, I have learned how fraudulent pieces of

27  jewelry are manufactured and then distributed throughout the United States and sold as

28

1  authentic Native American jewelry.  I am familiar with the marketing methods used to

2  deceive consumers.  I am also familiar with the Native American jewelry market and how it

3  is valued and advertised as made by a particular Native American artisan.  I have personally

4  been involved in obtaining federal search and arrest warrants, and I have directed,

5  coordinated, and assisted other law enforcement officers in the executions of these warrants.

6      3.      The information in this affidavit is based on my personal participation in this

7  investigation and information provided to me by other agents, officers and witnesses; and

8  information gained through my training and experience. Because this affidavit is being

9  submitted for the limited purpose of establishing probable cause, I have not included each

10 and every fact known to me concerning this investigation. I have set forth only those facts I

11 believe are relevant to a fair determination of probable cause to support the issuance of the

12 requested warrant. Unless specifically indicated otherwise, all conversations and statements

13 described in this affidavit are related in substance and in part only.

### PURPOSE OF AFFIDAVIT

14

15      4.      I make this affidavit in support of an application for a warrant authorizing the

16 search of the following residence as further described in Attachment A, for evidence, fruits

17 and instrumentalities, as further described in Attachment B, of the crimes of

18 misrepresentation of Indian produced goods and products; and conspiracy to commit these

19 offenses by Jerry Chris VAN DYKE, aka Jerry WITTEN, and others known and unknown,

20 in violation of 18 U.S.C. §§ 1159 and 371:

21      The residence of Jerry Chris VAN DYKE located at **9032 2nd Avenue**
22      **South, Seattle, Washington**.

### IACA BACKGROUND

23

24  **A.      The Indian Arts and Crafts Act Criminalizes the Sale of Items Falsely
            Sold as Native American Arts and Crafts**

25

26      5.      On August 27, 1935, Congress created the Indian Arts and Crafts Board (to

27 improve the economic status of Native Americans through the development and promotion

28

Affidavit of Special Agent Sean W. Hyrons – 2
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1  of authentic Native American arts and craftwork.  See 25 U.S.C. §§ 1158-1159.  The 1935

2  Act adopted criminal penalties for selling items misrepresented as Native American made.

3       6.       This provision, which set fines not to exceed $500 or imprisonment not to

4  exceed six months, or both, proved to be ineffective at stemming the flood of counterfeit

5  Native American arts and craftwork in the market.  In response to growing sales of

6  counterfeit Native American arts and crafts, Congress passed the Indian Arts and Crafts Act

7  of 1990, P.L. 101-644.  The Indian Arts and Crafts Act is a truth-in-advertising law that

8  prevents products falsely marketed as "Indian" or "Native American" when the products are

9  not, in fact, made by Native Americans. It is illegal to offer or display for sale, or sell any art

10 or craft product in a manner that falsely suggests it is Indian produced, an Indian product, or

11 the product of a particular Indian or Indian tribe or Indian arts and crafts organization,

12 resident within the United States.

13      7.       Under the Act, an Indian is defined as a member of any federally or officially,

14 State recognized tribe of the United States, or an individual certified as an Indian artisan by

15 an Indian tribe.  Subsequently, the Indian Arts and Crafts Amendments Act of 2010, P.L.

16 111-211, allowed the Indian Arts and Crafts Board to refer cases to any federal law

17 enforcement officer for investigation.  In 2012, the Indian Arts and Crafts Board entered into

18 an agreement with the USFWS to develop an investigative unit to pursue violations of Indian

19 Arts and Crafts Act.

20                  **SUMMARY OF PROBABLE CAUSE**

21      8.       This investigation involves the sale of falsely marketed Native American

22 jewelry and artwork by artist Jerry VAN DYKE, aka Jerry WITTEN,[1] at Raven's Nest

23 Treasure in Seattle.   In 2019, USFWS Special Agents made two separate purchases of

24 jewelry attributed to Jerry VAN DYKE from Raven's Nest Treasure.  On both purchases,

---

[1] Raven's Nest Treasure advertises Jerry VAN DYKE's artwork as made by Jerry WITTEN and referred to him as Jerry WITTEN in their communications with USFWS Special Agents.

1   Raven's Nest Treasure employees, told agents that Jerry VAN DYKE was Native American

2   and Nez Perce.[2]

3         9.      Agents researched Jerry VAN DYKE and Jerry WITTEN's possible affiliation

4   with the Nez Perce Tribe. According to the Nez Perce Tribal Enrollment Office and the

5   Bureau of Indian Affairs, neither Jerry VAN DYKE nor Jerry WITTEN is an enrolled

6   member or Indian Artisan with the Nez Perce Tribe or an Alaska Native enrolled with an

7   Aleut Tribe.

8         10.     During surveillance, agents observed Jerry VAN DYKE leave his residence

9   and drive directly to Raven's Nest Treasure where he sold his artwork to the gallery.

10   **INVESTIGATION**

11         11.     In the spring of 2019, agents began investigating an Indian Arts and Crafts

12   Board ("IACB") complaint about sales of falsely marketed Native American jewelry that

13   was attributed to artist Jerry VAN DYKE ("VAN DYKE"), aka Jerry WITTEN,[3] who was

14   described as Native American and Nez Perce at Raven's Nest Treasure in Seattle,

15   Washington.

16         12.     In February of 2019, IACB personnel visited Raven's Nest Treasure's on-line

17   store, where they found approximately eight items for sale that were attributed to VAN

18   DYKE. One item listed as sold was advertised as follows: "Horse Dance Stick, SOLD! By

19   Jerry WITTEN (VAN DYKE), Nez Perce." The other advertised items listed VAN DYKE

20   as the artist, but did not include a Nez Perce tribal affiliation; however, VAN DYKE's other

21   items are listed under a dropdown tab on the website that is titled Native American and

22   Native Aleut. Additionally, Raven's Nest Treasure advertises their art and jewelry at their

23   gallery and online store in the following manner: "At Raven's Nest Treasure we honor the

24   Native People who were here before we were. Out of respect for centuries-old traditions, we

25   only carry authentic Native Art," and "Raven's Nest Treasure Indian Art, Jewelry Antiques."

26

27   _____

28   [2] The Nez Perce Tribe is a federally recognized Indian tribe in north central Idaho.
    [3] Based on an open internet search, it appears that Jerry VAN DYKE's mother's maiden name was WITTEN.

Affidavit of Special Agent Sean W. Hyrons – 4
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

13.     In February of 2019, IACB Commissioner Charles Harwood visited Raven's Nest Treasure where he counted approximately ten items attributed to VAN DYKE. According to IACB Commissioner Harwood, most of VAN DYKE's items were labeled as Nez Perce.

*Undercover Purchase of Falsely Marketed Native American Jewelry from Raven's Nest Treasure*

14.     On April 16, 2019, agents, operating in an undercover capacity, visited Raven's Nest Treasure located at 85 Pike Street, Suite B, Seattle, Washington, 98101. During the contact, an employee of Raven's Nest Treasure identified herself verbally and with a business card as Kirra Steinbrueck to agents.  Ms. Steinbrueck told the agents that her family owned Raven's Nest Treasure.  According to Ms. Steinbrueck, her parents[4] have owned Raven's Nest Treasure for approximately thirty years and she has worked in the store for approximately eight years.

15.     Ms. Steinbrueck proceeded to show the agents merchandise that was attributed to VAN DYKE.  According to Ms. Steinbrueck, her parents buy most of the merchandise from VAN DYKE.  Ms. Steinbrueck stated that her parents either contact VAN DYKE directly or wait for him to visit the store to obtain his merchandise.  Ms. Steinbrueck told the agents that VAN DYKE was Native American and provided written biographical information on VAN DYKE that was created by a Raven's Nest Treasure employee ("unknown employee") based on information obtained from VAN DYKE.  The biography states that VAN DYKE is Nez Perce from Idaho and that VAN DYKE is married to Julie Underwood, aka Julie Van Dyke,[5] who is an Aleut from Alaska.

16.     Agents told Ms. Steinbrueck that they like biographies that contain photographs of the artist. Ms. Steinbrueck stated she had a photograph of the artist and

---

[4] As of October 23, 2019, Washington Secretary of State Corporation Division's website identified Matthew Steinbrueck as the owner/governor of Raven's Nest Treasure/ Raven's Nest, Inc. located at 85 Pike Street, Suite B, Seattle, Washington, 98101.
[5] Raven's Nest Treasure employees refer to Julie Underwood as Julie Van Dyke during their communications with USFWS Special Agents.

Affidavit of Special Agent Sean W. Hyrons – 5
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

retrieved a Polaroid photograph of VAN DYKE and Julie Underwood.  The Polaroid photograph had writing on the bottom, below the male (VAN DYKE) in the photograph, which stated, "JERRY NEZ PERCE/DUTCH," and writing on the bottom, below the female (Julie Underwood), which stated, "JULIE VAN DYKE FR. KODIAK, AK ALEUT."  Ms. Steinbrueck said that the photograph was taken in their store approximately 20 years ago.

17.     Agents then purchased four pieces of jewelry/pendants from Ms. Steinbrueck for $1,541.40 that were attributed to VAN DYKE. She described the pendants on the sales receipt as "Aleut Mask Pendants hand carved by Jerry WITTEN (VAN DYKE), set in sterling silver." Ms. Steinbrueck wrote down some of the raw materials used to create the pendants, which included fossilized walrus bone, tooth and ivory[6], abalone shell, mother of pearl, brass and copper. Finally, Ms. Steinbrueck also told agents that VAN DYKE makes the carvings/pendants without the setting and that Raven's Nest Treasure adds the sterling silver setting to the carvings/pendants.

*Jerry VAN DYKE and Julie Van Dyke Identified*

18.     On April 19, 2019, agents obtained a Washington State Department of Corrections jail booking photograph and a Washington driver's license photograph of a Jerry Chris VAN DYKE, which matched the Polaroid photograph of Jerry WITTEN that was provided by Ms. Steinbrueck.  Additionally, agents obtained a driver's license photograph from the State of Washington of a Julie Underwood, which matched the Polaroid photograph of Julie Van Dyke.

*Research into Jerry VAN DYKE and Julie Underwood's Tribal Affiliation*

19.     IACB personnel and agents contacted the Nez Perce Tribe to determine if either Jerry Chris VAN DYKE or Jerry WITTEN was an enrolled member or certified as an

---

[6] All four pendants were analyzed to determine if they contained walrus ivory, bone or tooth. Two of the four pendants that were described as containing fossilized walrus ivory, bone and/or tooth were determined to be walrus bone and/or tooth. The other two pendants that were described as containing fossilized walrus ivory, bone and/or tooth were determined to be ivory and/or bone of an undetermined species.

Affidavit of Special Agent Sean W. Hyrons – 6
USAO #2019R00667

1   Indian Artisan with the Tribe.  According to a Nez Perce Enrollment Specialist, neither Jerry

2   Chris VAN DYKE nor Jerry WITTEN is an enrolled member of the Nez Perce Tribe or

3   certified as an Indian Artisan with the Tribe. Currently, the Nez Perce Tribe does not have

4   any certified Indian Artisans associated with the Tribe.

5       20.     Agents also obtained a copy of VAN DYKE's Washington Department of

6   Corrections Presentence Investigation Report for an unrelated offense. The identification

7   section of the report listed VAN DYKE's race as white.

8       21.     Agents also contacted the Bureau of Indian Affairs, Alaska Region, in

9   reference to Jerry Chris VAN DYKE or Jerry WITTEN being registered as an Alaska Native

10  with an Aleut Tribe. According to the Tribal Operations Officer, neither Jerry Chris VAN

11  DYKE nor Jerry WITTEN are enrolled members of an Aleut Tribe; and Alaska Native tribes

12  do not have certified Indian Artisans.  Agents also inquired if Julie Van Dyke and/or Julie

13  Underwood were registered as an Alaska Native with an Aleut Tribe. According to the Tribal

14  Operations Officer, Julie Underwood is an enrolled member of an Aleut Tribe.

15  *Identification of Jerry VAN DYKE's Residence*

16      22.     On June 26, 2019, agents conducted surveillance at VAN DYKE's residence

17  located at **9032 2nd Avenue South, Seattle, Washington 98108**. During the surveillance,

18  agents observed a later model, silver, sedan, bearing Washington license plate BFR9705

19  parked in the driveway of **9032 2nd Avenue South, Seattle, Washington 98108**. A

20  registration check was conducted with the National Crime Information Center, which

21  returned the following information on Washington license plate BFR9705. The vehicle was

22  identified as a silver 1994 Infiniti ("VAN DYKE's vehicle"); registered to Jerry C. VAN

23  DYKE, drivers' license number VANDYJC461QB, 9032 2nd Avenue South, Seattle,

24  Washington 98108-4503.

25  *Surveillance of Jerry VAN DYKE*

26      23.     Between Tuesday, October 15, 2019 and Friday, October 18, 2019, agents

27  conducted surveillance at VAN DYKE's residence. During the surveillance, agents observed

28

Affidavit of Special Agent Sean W. Hyrons – 7
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1  VAN DYKE's vehicle parked at his residence, **9032 2nd Avenue South, Seattle,**
2  **Washington 98108.**

3      24.    On October 16, 2019 at approximately 7:26 a.m., agents observed a male
4  taking out trash from the residence located at **9032 2nd Avenue South, Seattle, Washington**
5  **98108.** Agents recognized the male as VAN DYKE from his Washington driver's license
6  photograph.

7      25.    On October 18, 2019 at approximately 10:02 a.m., agents observed VAN
8  DYKE and Julie Underwood leave VAN DYKE's residence in VAN DYKE's vehicle.
9  Agents followed VAN DYKE and Julie Underwood without losing sight of the vehicle until
10 it reached Pike Street in Seattle, Washington near Raven's Nest Treasure. At approximately
11 10:30 a.m., agents observed VAN DYKE park the vehicle at Pike Street, exit the vehicle, and
12 then began walking in the direction of Raven's Nest Treasure. Julie Underwood remained in
13 the vehicle.

14     26.    Agents entered Raven's Nest Treasure and observed VAN DYKE looking at
15 merchandise in the store. A short time later, agents observed VAN DYKE approach the sales
16 counter[7] and make contact with a gallery employee who had previously identified herself as
17 Barbara (last name unknown). Agents observed Barbara remove an unknown amount of U.S.
18 currency from the cash register and hand it to VAN DYKE. Agents observed VAN DYKE
19 hand Barbara what appeared to be a small Aleut mask pendant similar to the pendants that
20 agents had purchased in an undercover capacity from Raven's Nest Treasure on April 16,
21 2019. Agents then overheard Barbara state to VAN DYKE that they would need to add a
22 setting to the pendant. Agents observed Barbara fill out a receipt similar to the receipt that
23 agents obtained when they purchased the pendants from Raven's Nest Treasure on April 16,
24 2019. VAN DYKE then left Raven's Nest Treasure and returned to his vehicle.

25
26
27
28

---

[7] The sales counter where VAN DYKE was standing has exhibited and advertised VAN DYKE's jewelry as "Jerry WITTEN (VAN DYKE), Nez Perce."

Affidavit of Special Agent Sean W. Hyrons – 8
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    27.    VAN DYKE entered his vehicle and began driving in the direction of his

2    residence. At approximately noon, VAN DYKE and Julie Underwood returned to their

3    residence. They were then observed entering their residence with what appeared to be a

4    plastic bag or grocery bag.

5    *Email and telephone correspondence with Raven's Nest Treasure*

6    28.    Between October 24, 2019 and November 26, 2019, agents, in an undercover

7    capacity and using the fictitious name Savanna Moore, communicated with employees of

8    Raven's Nest Treasure via emails and telephone calls in reference to VAN DYKE's Aleut

9    mask pendants for sale at their store. Below are the relevant emails and a summary of the

10   telephone calls.

11   29.    On October 24, 2019, at approximately 3:27 p.m., agents called Raven's Nest

12   Treasure to inquire about Aleut mask pendants attributed to VAN DYKE that were for sale

13   at their store.  During the phone call, the agents spoke with an employee of Raven's Nest

14   Treasure who identified herself as Anna ("Nelson")[8].  Agents requested that Nelson send

15   them photographs of VAN DYKE's Aleut mask pendants that had not already been set in

16   sterling silver or attached to a necklace. The agents' request was an attempt to obtain a

17   picture of the Aleut mask pendant that VAN DYKE sold to Raven's Nest Treasure on

18   October 18, 2019.

19   30.    On November 4, 2019, at approximately 12:24 p.m., Nelson called the agents.

20   Agents documented the conversation immediately following the phone call. Below is a

21   summary of the phone conversation:

22   • Nelson told the agents that Raven's Nest Treasure had several newer and

23     older Aleut mask pendants by VAN DYKE at the store.

24

25

26

27   _____

28   [8] Anna later identified herself as Anna Nelson in an email she sent to the agents undercover email address.

Affidavit of Special Agent Sean W. Hyrons – 9
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1

2

3

- Nelson stated that the owner of Raven's Nest Treasure, Matthew Steinbrueck ("Steinbrueck"), would photograph the pendants and send them pictures.

4    31.     On November 13, 2019, at approximately 6:09 p.m., agents and a female

5    civilian[9] ("civilian") called Nelson and thanked her for responding to their email. During the

6    phone call, agents had the civilian hold the phone away from her ear so they could hear the

7    conversation between the civilian and Nelson. Agents listened to their conversation and

8    documented it immediately following the phone call.  Before the conversation ended, Nelson

9    stated that Steinbrueck was present and asked the civilian if she wanted to speak with him.

10   Before the civilian could answer, Steinbrueck began speaking to the civilian on the phone.

11   32.     Below is a summary of the conversation between Steinbrueck, the civilian and

12   agents.[10]

13

14

15

- Steinbrueck stated he had taken a picture of Aleut mask pendants on a black tray and laid them out in a grid format so that the civilian could easily identify the pendants that she wanted to purchase.

16

- Steinbrueck stated that he had the pendants set in sterling silver by another artist.

17

18

- Steinbrueck stated that VAN DYKE's wife was Aleut and was from an Alaskan Island.

19

20

- Steinbrueck stated that he and VAN DYKE got together and came up with the idea to create Aleut mask pendants that resembled Aleut masks from Alaska.

21

22

23

- Steinbrueck stated that VAN DYKE has a book with photographs of Aleut masks from the Museum; and that VAN DYKE use the pictures in the book as inspiration for the Aleut mask pendants he carves.

24

25

26

27

28

---

[9] The civilian used in this phone call did not received any form of compensation for her participation. The civilian was used to continue the investigative ruse and at no point acted outside the immediate supervision of agents.

[10] The civilian and the agents did not ask Steinbrueck any questions and he made the following statements without being prompted.

- Steinbrueck stated that he provides VAN DYKE with the materials he uses in his pendants.
- Steinbrueck stated that VAN DYKE's pendants in the picture he sent contained woolly mammoth tusk and fossilized whalebone; and that the dark color in the pendants was the fossilized whalebone.
- Steinbrueck stated that VAN DYKE did other style carvings.
- Steinbrueck stated he would send the picture of the pendants.

33.    On November 13, 2019, Steinbrueck sent the agents an email that contained following photograph of pendants attributable to VAN DYKE:



34.    The agents reviewed the photo to see if they recognized the Aleut mask pendant that VAN DYKE had handed to a Raven's Nest Treasure employee, Barbara, on October 18, 2019. Based on the agents' recollection, it appears that the pendant in the bottom left corner of the photograph may be the pendant that VAN DYKE handed to Barbara.

35.    On November 14, 2019, at approximately 6:13 p.m., agents spoke with Nelson and Steinbrueck by telephone and recorded the conversation, which is summarized below:

- Nelson told agents that the pendant they inquired about in the email was either made from mammoth, mastodon or elephant ivory but the way it is fossilized with the blueish green color would make it mammoth or mastodon.
- Agents asked if it was VAN DYKE or his wife that was Aleut.

Affidavit of Special Agent Sean W. Hyrons – 11
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

- Nelson stated that VAN DYKE was Nez Perce from eastern Washington, VAN DYKE's wife was Aleut from Kodiak Island and that they lived in Seattle.
- Agents asked if all the pendants were made by VAN DYKE.
- Nelson stated that she believes all the Aleut mask pendants at Raven's Nest Treasure are made by VAN DYKE and that Raven's Nest Treasure's silversmith then sets the pendants.
- Nelson stated that Raven's Nest Treasure got more (pendants) today.
- Agents asked if they could get photographs of the new pendants.
- Nelson asked if the agents would like to talk with Steinbrueck since he would be the one to send agents the pictures.
- Agents asked Steinbrueck what the pendants were made from.
- Steinbrueck stated all the pendants are made of ancient fossilized woolly mammoth ivory that is over ten thousand years old. Steinbrueck then stated…Guaranteed that is what it is… I can actually show you the piece it was cut out of…I still have sections of it left … I provide it to my artist… he carves these pieces out of it… It is 100% guaranteed that its' not elephant (ivory) or anything, it is woolly mammoth ancient ivory.
- Agents asked if VAN DYKE made all the pendants.
- Steinbrueck stated that VAN DYKE makes all the pendants. I do not have anybody else that I know can do that. I have a close relationship with him for years and he carved all of these. He (VAN DYKE) is a Nez Perce Native and his wife is an Aleut from Kodiak Island in Alaska.
- Steinbrueck then repeated the information from his November 13, 2019 phone conversation with the female civilian about VAN DYKE's inspiration for creating the Aleut mask pendants.
- The agents asked if VAN DYKE's wife, Julie Underwood, made Aleut mask pendants.

Affidavit of Special Agent Sean W. Hyrons – 12
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

- Steinbrueck stated that VAN DYKE's wife does not make this type of work (Aleut mask pendants) and that she makes necklaces and things like that.
- The agents asked if they could get pictures of the newer pendants that just came in.
- Steinbrueck stated that he should be getting two more (pendants) in a day or two...that I have to dole out... have Jerry (VAN DYKE) carve them and my silversmith set them. I have two new ones (pendants) that are not here. When I get a chance over the weekend, I will email you the pictures.

36.    On November 14, 2019, Steinbrueck sent agents the following email:

*"Hello Savanna, Are these the 2 maskette pendants you mentioned?*
*Both are Mammoth ivory. It is Jerry's wife that is Aleut.*
*Looking forward to hearing back from you.*
*Matthew"*



37.    On November 14, 2019, agents sent the following email to Steinbrueck and Nelson:

*"Hey Matthew and Anna,*
*Sorry I haven't got back with you. The two pendants I would like to purchase are listed in the photograph below. I will call you later today to make the purchase. Please let me know if those two pendants are still available.*
*Thanks,*
*Savanna"*

Affidavit of Special Agent Sean W. Hyrons – 13
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970



38.     On November 22, 2019, at approximately 1:44 p.m., agents called Raven's Nest Treasure to purchase the two Jerry VAN DYKE Aleut mask pendants for $1,080.00. Agents spoke with Raven's Nest Treasure employee, Barbara, who processed the purchase.

39.     On November 27, 2019, agents received the two Aleut mask pendants attributed to VAN DYKE via the United States Postal Service.

40.     As of December 9, 2019, agents have been unable to find any artwork, other than what is being sold at Raven's Nest Treasure that is attributed to Jerry WITTEN or VAN DYKE. Agents have not been able to identify any business owned (both e-commerce or brick and mortar) by Jerry WITTEN or VAN DYKE.  As per Matthew Steinbrueck, VAN DYKE is the artist/manufacturer or producer of the jewelry.

41.     On December 18, 2019, agents contacted Raven's Nest Treasure to confirm VAN DYKE creates his artwork at home. Agents recognized the male voice as Matthew Steinbrueck. When an agent asked if it was possible to view VAN DYKE's work at his studio, Steinbrueck responded "no" and then stated that VAN DYKE "works for me" and later that VAN DYKE "works from home."

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

42.     Based upon my training and experience, as well as the knowledge and experience of other agents and law enforcement officers in my office, I know the following:

     a.  Native American jewelry counterfeiters and artists store their inventory and related materials in their residences.  This includes, but is not limited to:

Affidavit of Special Agent Sean W. Hyrons – 14
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

i.  The prohibited items themselves including but not limited to jewelry making equipment/supplies/tools, wood, gems, raw material and minerals to include ivory, bone, mother of pearl, abalone shell, wood, turquoise, copper, brass, silver, and gold, grinders, polishers, epoxy, signature stamps/punches, hallmarking tools, wax molds, etc.;

ii. items related to the packaging, processing, storage, shipping and transportation of the prohibited items;

iii. books, records, receipts, notes, ledgers, correspondence and other records relating to the distribution of the prohibited items;

iv. personal notes/ledgers and records reflecting names, addresses, telephone numbers and other contact or identification data relating to the distribution of the prohibited items;

v.  records relating to income and expenditures of money related to the sale and transfer of prohibited items, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers; and

vi. documents indicating travel in interstate and foreign commerce such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills.

b.  Further, it is generally a common practice for counterfeiters to maintain in their residences records relating to their fraudulent activities. Because counterfeit items derive value from purported authenticity, in many instances counterfeiters will maintain records to duplicate authenticity. It is common practice for a counterfeiter to keep transactional records to show sale and transfer of items. Additionally, counterfeiters must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their business.

Affidavit of Special Agent Sean W. Hyrons – 15
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

c.  It is also a generally common practice for counterfeiters to maintain records of wire transfers, cashier checks, and money orders related to the sale and transfer of prohibited items.  Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with the sales of the fraudulent items would also typically be maintained in residences.

d.  I know that handmade Native American artwork is manufactured by use of various techniques, to include cutting, buffing, grinding, carving tools, polishing and stone placement with the use of turquoise, silver, coral, ivory, bone, wood and lapis.  Other equipment—such as hallmarking tools, grinders, buffing instruments, chemicals, solvents and adhesives, and the like is typically used in this production process.  Once the artwork and jewelry has been produced, a usual practice is to package the artwork and jewelry in individual sealed cellophane or plastics bags, and then place those bagged items in sequentially larger bags or boxes for transportation.

///
///
///

Affidavit of Special Agent Sean W. Hyrons – 16
USAO #2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1

## **CONCLUSION**

2       43.     Based on the information set forth herein, there is probable cause to search the

3 residence as further described in Attachment A, for evidence, fruits and instrumentalities, as

4 further described in Attachment B, of the crimes of misrepresentation of Indian produced

5 goods and products, and conspiracy to commit these offenses by Jerry Chris VAN DYKE,

6 aka Jerry WITTEN, and others known and unknown, in violation of 18 U.S.C. §§ 1159 and

7 371.

8

9

10                               SEAN W. HYRONS, Special Agent

11                               U.S. Fish and Wildlife Service

12      SUBSCRIBED AND SWORN to before me this 18 day of December, 2019.

13

14

15

16                               MICHELLE L. PETERSON

17                               United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28